GUERDON INDUSTRIES, INC., *v.* FIDELITY &
CASUALTY COMPANY OF NEW YORK.

1. INSURANCE—PRODUCTS LIABILITY POLICY—DUTY OF INSURER TO
    DEFEND—PLEADING.
       An insurer's duty to defend the insured under a products lia-
       bility policy is measured by the allegation in the pleading
       of the plaintiff who sues the insured, not upon the insurer's
       liability to pay.

2. SAME—ACCIDENT.
       An accident within the meaning of policies of accident insurance
       may be anything that begins to be, that happens, or that is
       a result which is not anticipated and is unforeseen and un-
       expected by the person injured or affected thereby and takes
       place without the insured's foresight or expectation and with-
       out design or intentional causation on his part.

3. WORDS AND PHRASES—ACCIDENT.
       An *accident* is an undesigned contingency, a casualty, a happen-
       ing by chance, something out of the usual course of things,
       unusual, fortuitous, not anticipated, and not naturally to be
       expected.

4. INSURANCE—ACCIDENT—DEFENSE OF SUITS.
       Declaration in action by house trailer purchaser that claimed
       injury to plaintiffs and damage to their property as a result
       of the insured's failure to provide the trailer with adequate
       drainage fittings and an adequate drainage connection *held*,
       to have alleged such an unanticipated, unforeseen, and un-
       expected occurrence as to be caused by accident within meaning
       of comprehensive general and automobile liability policy which
       included coverage for injuries and damages due to accident,
       products liability, and defense of suits clause, as to require
       defendant insurer to defend the action.

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 29A Am Jur, Insurance § 1452.
    Allegations in third person's action against insured as deter-
       mining liability insurer's duty to defend.  50 ALR2d 458.
[2, 4] 29A Am Jur, Insurance § 1377.
[3] 38 Am Jur, Negligence § 6.

Appeal from Oakland; Holland (H. Russel), J. Submitted June 5, 1963. (Calendar No. 22, Docket No. 50,197.) Decided September 4, 1963.

Bill by Guerdon Industries, Inc., a Delaware corporation, against Fidelity & Casualty Company of New York, a New York corporation, to compel it to defend products liability damage suit under its policy of insurance. Cross-bill by insurance company asking that it be relieved of such duty. Decree for defendant. Plaintiff appeals. Reversed and remanded.

*Goodman & Shifman (Bernard L. Goodman,* of counsel), for plaintiff.

*Sweeny, Dodd, Kerr, Wattles & Russell (J. William Phillips,* of counsel), for defendant.

SMITH, J. By stipulation of the parties, the case was submitted on the following agreed statement of facts:

"On April 1, 1960, plaintiff, Guerdon Industries, purchased from defendant, Fidelity & Casualty Company of New York, a comprehensive general and automobile liability policy and paid to the defendant $19,866 as the premium on this policy.

"Under 'coverage A' of the insuring agreement, the defendant agreed 'to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident.' This coverage specifically applied to products liability up to $500,000. In addition, under 'coverage C' of the policy the defendant agreed 'to pay on behalf of the insured all sums which the insured shall become legally obligated

to pay as damages because of injury to or destruction of property including the loss of the use thereof, caused by accident.' The limits of defendant's obligation under this provision for products liability was established at $100,000.

"The insuring agreement further provided:

" 'With respect to such insurance as is afforded by this policy, the company shall: (a) *defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account* thereof, even if such suit is groundless, false or fraudulent;'

"During the term of the policy, Mr. and Mrs. Richard F. Wallen purchased a house trailer manufactured by the plaintiff from 1 of plaintiff's dealers and thereafter instituted a suit against plaintiff and plaintiff's dealer, John Trojan (Wayne county circuit court cause Number 319,990).

"In paragraph 7 of count 1 of their declaration, Mr. and Mrs. Wallen alleged:

" 'Said trailer was in fact not as represented, because:

" 'A. it contained inferior plumbing

" 'B. that the bathtub in said trailer was not connected to drainage pipe

" 'C. that the said bathtub was connected by a faulty fitting and delivered with a broken fitting causing drainage of said bathtub to saturate the floor, outside covering, below the floor, and the insulation contained between them and by capilarity saturating and causing wet insulation between the inside and outside aluminum surfaces of said trailer causing said aluminum outside covering to warp and buckle ruining the appearance of said trailer, and greatly diminishing and ruining the insulation required in said side walls and flooring.'

"In paragraph 9 of count 1, it was alleged that:

" 'Plaintiff Richard F. Wallen's minor affliction of arthritis has been aggravated to an extreme case of rheumatoid arthritis accompanied with greatly increased pain and suffering and plaintiff Lorain

Wallen has developed a rheumatoid arthritic condition and suffers great pain and inconvenience because of the unhealthy conditions caused by the negligence of the defendants in fraudulently and negligently delivering a trailer not in accord with their representations.'

"In paragraph 4 of count 2 of the declaration it was alleged:

" 'Defendants warranted said trailer to be new, free of broken, injured or defective parts, free from defects of manufacture upon its delivery at defendants' lot and proper placement thereon by defendants. As a result of aforementioned defects plaintiffs have suffered great damage in excess of $15,500, because of pain and suffering up to the present time and will in the future suffer as a result of said breach of warranty. And that said trailer has rotted, and a large part of the insulation and other materials have been damaged and the floor buckling and the plywood composing same disintegrating beyond repair except for replacement.'

"In paragraph 6 of count 3 of the declaration it was alleged:

" 'By reason of said breach of warranty of fitness plaintiffs were caused great discomfort and illness, their clothing and other property were damaged by fungus growths, the trailer greatly damaged, their peace of mind was disturbed and they suffered great mental anguish and physical pain, all to the plaintiff's damage in the amount of $15,500.'

"And in paragraphs 3 through 5 of count 5 of the declaration the Wallens alleged:

" 'Defendants knew, or with reasonable inquiry should have known, that failure to hook up the bathtub to the soil pipe would cause large amounts of water and moisture throughout said trailer creating a damp condition, unhealthy to human beings and conducive to decay, fungus growth, corrosion, and offensive odors.

" 'Notwithstanding the knowledge and duties of defendants to manufacture and properly provide

drainage and to inspect said trailer upon delivery. That said proper drainage was not provided, and failed, and defendants turned possession of said trailer over to your plaintiffs in an unfit and unsanitary condition due to its negligent construction necessarily resulting in the damages alleged.

" 'As a direct, proximate and natural consequence of defendants' negligent construction of said trailer, plaintiffs suffered great damage to their health, property, peace of mind and were caused great mental anguish and physical pain and suffering, all to their damage in the amount of $15,500.' "

Attorneys for the insurance company entered an appearance for Guerdon in the damage suit brought by the Wallens, but said attorneys sought to withdraw. By bill and cross-bill both Guerdon and the company seek a declaratory decree, Guerdon to compel the company to defend and the company to be relieved of this alleged duty. The trial court held for the insurance company finding "that the term 'accident' in its plain and ordinary popular sense is confined to the happening of a single event referable to definite time and place, and cannot be extended to include sickness or disease, resulting from a gradual process of developing arthritis, due to a series of continued and repeated exposures to the conditions of the trailer home involved, extending over a period of 7 months where none of these exposures were sufficient to cause injury, but when aggravated over the period in question, culminated in the injurious result."

It is agreed that the question is: "Whether the word 'accident' as used in the general liability insurance contract, is limited in meaning to a single event referable to a definite time and place, or whether sickness, or disease which results from a series of repeated exposures, none of which is sufficient in itself to cause injury but which when aggregated over

a sufficient length of time culminates in an injurious result may be said to be 'caused by accident' within the meaning of the insurance contract."

The meaning of the word "accident" in a similar policy issued by the same company was construed recently in the case of *Moore* v. *Fidelity & Casualty Company of New York,* 140 Cal App2d 967 (295 P2d 154). In that case a policy was issued for premises used as a self-service laundry. The claim in the damage suit was that in the operation of clothes driers, lint accumulated and was deposited in drains. The drains became clogged with the lint and when a rain occurred water leaked into the premises of the plaintiff in the damage suit. Insured who operated the self-service laundry and who was the defendant in the damage suit brought action against the insurance company. The company claimed, as they do here, that the complaint for damages was not caused by an accident. The California court disagreed. "The proper test is," the court said (p 972), "did the insured operate negligently which resulted in an event which was unexpected or unforeseen by the person injured? If such a state of affairs appears from the pleading served upon the insured, considering all the facts stated in the complaint with doubts resolved against the insurance company, then a claim has been alleged which is covered by the policy and the insurer is obligated to defend."

The trial court's holding against plaintiff-appellant herein was based upon its conclusion that the term "accident" as used in the products-hazard section of the policy: "cannot be extended to include sickness or disease, resulting from a gradual process of developing arthritis, due to a series of continued and repeated exposures to the conditions of the trailer home involved, extending over a period of 7 months where none of these exposures was suf-

ficient to cause injury, but when aggravated over the period in question, culminated in the injurious result." This conclusion confuses cause and effect. Even under the "single event" test employed by the trial court it would seem that an accident was alleged in the damage suit declaration. The declaration alleged that "the bathtub in said trailer was not connected to drainage pipe" and that "the said bathtub was connected by faulty fitting and delivered with a broken fitting." In either of these "single events", we construe that an accident was declaration-alleged within the meaning of the policy. It is settled that the insurer's duty to defend the insured is measured by the allegation in plaintiff's pleading. The duty to defend does not depend upon insurer's liability to pay. *Hoosier Casualty Co.* v. *Chimes, Inc.* (ED Mich), 95 F Supp 879; 50 ALR2d 458, at p 475.

We do not mean to infer that we adopt the "single event" test as defined by the trial court and contended for by the company. We say, merely, that under that definition the allegations are sufficient to require the company to defend. A better definition is that contained in 10 Couch on Insurance (2d ed), § 41:6, p 27, which is of 1962 vintage and reflects what is currently understood by the word "accident" as used in such a policy. It reads as follows:

"An 'accident,' within the meaning of policies of accident insurance, may be anything that begins to be, that happens, or that is a result which is not anticipated and is unforeseen and unexpected by the person injured or affected thereby—that is, takes place without the insured's foresight or expectation and without design or intentional causation on his part. In other words, an accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual,

fortuitous, not anticipated, and not naturally to be expected."

We hold that the claim of injury to persons and damage to property alleged in the Wallens' declaration to be the result of the insured's failure to provide the trailer with adequate drainage fittings and an adequate drainage connection was such an unanticipated, unforeseen and unexpected occurrence as to be "caused by accident" within the meaning of the policy.   Of like import, see *Hauenstein* v. *Saint Paul-Mercury Indemnity Co.*, 242 Minn 354 (65 NW2d 122).

Reversed and remanded for entry of declaratory decree in favor of appellants.   Costs to appellants.

CARR, C. J., and DETHMERS, KELLY, BLACK, KAVANAGH, SOURIS, and O'HARA, JJ., concurred.