*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRIAN WEBB,

        Plaintiff-Appellee,

and

VHS OF MICHIGAN, INC., doing business as
DETROIT MEDICAL CENTER,

        Intervening Plaintiff-Appellee,

v

PROGRESSIVE MARATHON INSURANCE
COMPANY,

        Defendant-Appellant,

and

MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY also known as
MICHIGAN ASSIGNED CLAIMS PLAN,

        Defendant-Appellee,

and

UNNAMED SERVICING INSURER,

        Defendant.

FOR PUBLICATION
January 28, 2021
9:05 a.m.

No. 351048
Wayne Circuit Court
LC No. 18-012887-NF

Before: JANSEN, P.J., and SERVITTO and RIORDAN, JJ.

JANSEN, P.J.

In this no-fault action, defendant, Progressive Marathon Insurance Company (Progressive) appeals by leave granted[1] the trial court's order denying Progressive's motion for summary disposition under MCR 2.116(C)(10), which sought to rescind coverage on the basis that the insurance policy at issue was procured by fraud. We reverse, vacate the portion of the trial court's order denying Progressive's motion for summary disposition as to Clark, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

This case arises out of a motor vehicle accident that occurred on March 24, 2018, in Detroit, Michigan. At the time of the accident, plaintiff, Brian Webb, was driving a 2013 Dodge Challenger registered to his mother, Chirece Clark, and insured in her name. Webb was not listed as a driver or member of Clark's household on the policy. Webb spent approximately two weeks in the hospital after the accident.

Progressive sought to deny coverage because Clark did not disclose on her application for insurance that Webb lived with Clark. According to Progressive, Clark's premiums would have been 32% higher had Webb's identity been disclosed. Two telephone call recordings between Clark and Progressive agents were disclosed during the course of discovery. During the first call, which occurred on November 23, 2016, Clark did in fact disclose Webb's identity and residence in her home. She also disclosed that Webb would be the primary driver of the vehicle. Clark was soliciting quotes from the agent, but did not purchase a policy at that time. Instead Progressive emailed Clark a quote at the e-mail address she provided. During the second call, which occurred on November 30, 2016, the topic of who was in Clark's household did not come up. However, when Webb spoke with the insurance agent to make payment for the policy, he told the agent he was Clark's "friend." When Clark eventually submitted the application for insurance, Webb was not listed as a resident relative in Clark's home. Clark did not attempt to add Webb as a resident of her home after receiving the completed application for insurance from Progressive, which she signed and returned.

The trial court denied Progressive's motion for summary disposition, concluding there were genuine issues of material fact regarding whether Clark committed fraud when submitting the application for insurance. The trial court also concluded Webb was innocent to Clark's fraud and, when balancing the equities between Webb's need for coverage and Progressive's desire to avoid liability, those equities favored Webb.[2] This appeal followed.

---

[1] *Webb v Progressive Marathon Ins Co*, unpublished order of the Court of Appeals, entered January 10, 2020 (Docket No. 351048).

[2] In a separate order, the Michigan Automobile Insurance Placement Facility ("MAIPF") was dismissed from the case when the trial court granted its motion for summary disposition. That order has not been appealed.

## II. STANDARD OF REVIEW

"Appellate review of the grant or denial of a summary-disposition motion is de novo . . . ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). This Court "review[s] a motion brought under MCR 2.116(C)(10) by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "Summary disposition is appropriate . . . if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West*, 469 Mich at 183. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*.

The interpretation of a contract, such as an insurance policy, is also reviewed de novo. *Reed v Reed*, 265 Mich App 131, 141; 693 NW2d 825 (2005); see also *Meemic Ins Co v Fortson*, 324 Mich App 467, 481; 922 NW2d 154 (2018) (insurance policies are reviewed under standard principles of contractual interpretation), aff'd on other grounds ___ Mich ___; ___ NW2d ___ (2020) (Docket No. 158302). "When interpreting a contract, such as an insurance policy, the primary goal is to honor the intent of the parties." *Fortson*, 324 Mich App at 481 (quotation marks and citation omitted).

Rescission is "granted only in the sound discretion of the court." *Lenawee Co Bd of Health v Messerly*, 417 Mich 17, 26; 331 NW2d 203 (1982). "The trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Berryman v Mackey*, 327 Mich App 711, 717; 935 NW2d 94 (2019).

## III. ANALYSIS

### A. FRAUDULENT MISREPRESENTATION IN THE PROCUREMENT OF THE POLICY

Progressive first argues the trial court erred when it concluded that factual issues precluded summary disposition on the issue of whether Clark committed fraud when submitting her application for insurance. We agree.

The elements of fraud in connection with an insurance policy are as follows:

> To establish actionable fraud, [Progressive] bears the burden of proving that (1) [Clark] made a material misrepresentation; (2) it was false; (3) when [Clark] made it, [she] knew it was false, or else made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) [she] made it with the intention that it should be acted on by [Progressive]; (5) [Progressive] acted in reliance on it; and (6) [Progressive] thereby suffered injury. [*Titan Ins Co v Hyten*, 491 Mich 547, 571-572; 817 NW2d 562 (2012).]

"When there is a question of fact on at least one of the elements, and the insured is not otherwise entitled to summary disposition, the matter is one for the jury." *Nahshal v Freemont Ins Co*, 324 Mich App 696, 719; 922 NW2d 662 (2018).

"Rescission is justified in cases of innocent misrepresentation if a party relies upon the misstatement, because otherwise the party responsible for the misstatement would be unjustly enriched if he were not held accountable for his misrepresentation." *Lash v Allstate Ins Co*, 210 Mich App 98, 103; 532 NW2d 869 (1995). Thus, even if it is true that Progressive completed the application and Clark did not read it, Progressive was still entitled to an order that Clark committed fraud in connection with the application for insurance. See *Montgomery v Fidelity & Guaranty Life Ins Co*, 269 Mich App 126, 129-130; 713 NW2d 801 (2005) ("Whether it was plaintiff, the decedent, or the agent who misrepresented the decedent's tobacco use on the application is not material because plaintiff and the decedent signed the authorization, stating that they had read the questions and answers in the application and that the information provided was complete, true, and correctly recorded.").

The evidence of record in this case is clear that Clark committed fraud in the procurement of the insurance policy at issue. During the first phone call with Progressive's agent, Clark initially disclosed that Webb was not only a member of her household, but that Webb would be the primary driver of the vehicle. Clark asked the agent to run various coverage scenarios in order to find a better price to insure the Challenger, and even inquired if transferring the title of the vehicle to Webb's name only would provide a better insurance rate. Progressive's agent indicated that the insurance rate would only drop minimally, because Webb and Clark were members of the same household. After the call ended, the agent forwarded an insurance quote to the e-mail address Clark provided. One week later, Clark again called Progressive and spoke to a second agent, explaining that the quote sent to her via e-mail by the first agent was "way higher" than discussed. At no point during the second phone call did Clark mention anything about Webb living in her household or driving the vehicle, and when Webb spoke to the agent to pay the premium, he identified himself as a friend.

To be clear, we conclude that Progressive is entitled to rescind its policy as it pertained to Clark in its entirety: (1) the policy was procured through Clark's misrepresentation that no one else lived in her household, and this misrepresentation was material; (2) the representation was false, as Clark was not the sole member of her household, nor would she be the primary driver of the vehicle; (3) Clark knew that she was not the sole member of her household and that she was not the sole driver of the vehicle; (4) Clark made the misrepresentation with the intent that she would obtain insurance, as evidenced by Clark's signature on the insurance application that contained the misrepresentation; (5) Progressive relied on the misrepresentation in issuing the insurance policy; and (6) Progressive was injured where it would not have ordinarily issued the policy according to its underwriting guidelines and for a decreased premium as the actual risk of providing the insurance was not fully contemplated. *Titan Ins Co*, 491 Mich at 555, 571-572. Thus, we conclude that Progressive was entitled to summary disposition in its favor on the issue of whether Clark committed fraud when procuring the policy at issue.

B. WEBB AS AN INNOCENT PARTY AND THE BALANCING OF THE EQUITIES

Next, Progressive argues the trial court erred when it concluded that Webb was an innocent party with respect to Clark's fraud. Progressive asserts that Webb conspired with Clark to defraud Progressive, evidenced by Webb's statement to the insurance agent that he was Clark's "friend." We conclude that a question of fact remains regarding whether Webb participated in the fraudulent

procurement of the insurance policy at issue. Accordingly, the trial court erred by finding Webb was an innocent party and then proceeding to engage in a balancing of the equities analysis.

Under prior caselaw, "[t]he 'innocent third party' rule prohibit[ed] an insurer from rescinding an insurance policy because of a material misrepresentation made in an application for no-fault insurance where there is a claim involving an innocent third party." *Sisk-Rathburn v Farm Bureau Gen Ins Co of Mich*, 279 Mich App 425, 430; 760 NW2d 878 (2008). Recently, in *Bazzi v Sentinel Ins Co*, 502 Mich 390; 919 NW2d 20 (2018), our Supreme Court addressed the viability of the innocent-third-party rule in the context of no-fault law. In *Bazzi*, the plaintiff, the son of the insured, brought suit against the defendant insurer for PIP benefits. *Bazzi*, 502 Mich at 396. The defendant obtained a default judgment against the insured rescinding the policy on the basis of fraud. *Id*. The defendant then moved for summary disposition in the trial court with respect to the plaintiff's claims, which the trial court denied on the basis of the innocent-third-party rule. *Id*. at 397. This Court reversed, concluding "the innocent-third-party rule did not survive this Court's decision in *Titan* because there was no meaningful distinction between the easily-ascertainable-fraud rule and the innocent-third-party rule and because no statute prohibits an insurer from raising a fraud defense with respect to PIP benefits." *Id*. at 397-398.

Our Supreme Court agreed with this Court that the innocent-third-party rule was not applicable. The Court first noted that "[i]n the absence of any applicable statute . . . the rights and limitations of the coverage are entirely contractual and construed without reference to the statute." *Bazzi*, 502 Mich at 399-400. Our Supreme Court also reiterated that in *Titan*, it held " 'an insurer is not precluded from availing itself of traditional legal and equitable remedies to avoid liability under an insurance policy on the ground of fraud in the application for insurance, even when the fraud was easily ascertainable and the claimant is a third party.' " *Id*. at 403, quoting *Titan*, 491 Mich at 571. Thus, our Supreme Court conclusively held that *Titan* abrogated the innocent-third-party rule in the context of the no-fault act. *Bazzi*, 502 Mich at 407.

After reviewing the record evidence in this case, we conclude that a question of fact remains regarding whether Webb participated in the fraudulent procurement of the insurance policy at issue. The evidence is clear that during the first phone call between Clark and Progressive's agent, Webb spoke directly to Progressive's agent regarding coverage and the cost of the policy. Webb also spoke to Progressive's agent during the second phone call. However, this time, Webb did not indicate that he would be the primary driver of the vehicle or that he was a member of Clark's household. Rather, Webb provided authorization to use his debit card to purchase the policy. Webb provided Progressive's agent with his address and phone number, and identified himself as Clark's "friend." Thus, a material question of fact remains regarding whether Webb participated in the fraudulent procurement of the insurance policy. If a trier of fact answers that question in the affirmative, then Webb cannot be considered an innocent party, and the trial court need not engage in any balancing of the equities where Progressive would be entitled to rescind coverage to Webb. Indeed, our Supreme Court recently explained that "[a]t common law, the defrauded party could only seek rescission, or avoidance of the transaction, if the fraud related to the inducement to or inception of the contract." *Meemic Ins Co v Fortson*, ___ Mich ___; ___ NW2d ___ (2020) (Docket No. 158302); slip op at 14. Thus, under the no-fault act, an insurer may only deny all coverage under a policy on the basis of fraud if the policy itself was procured by fraud. *Id*. at ___; slip op at 15-16.

## IV. CONCLUSION

We reverse, vacate the portion of the trial court's order denying Progressive's motion for summary disposition as to Clark, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Michael J. Riordan